UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH BRANCO, as surviving spouse and as personal representative of the estate of RUTH BRANCO,

Plaintiff,

v.

LIFE CARE CENTERS OF AMERICA, INC. d/b/a LIFE CARE CENTER OF BOTHELL, a Tennessee corporation,

Defendant.

CASE NO. C05-1139JCC

ORDER

This matter comes before the Court on Defendant's Motion for Protective Order ("Def.'s Mot.") (Dkt. No. 14), Plaintiff's Opposition thereto ("Pl.'s Opp'n") (Dkt. No. 19), and Defendant's Reply (Dkt. No. 23). The Court has considered the briefs and declarations submitted by the parties and has determined that oral argument is not necessary. For the reasons discussed below, the Court DENIES Defendant's motion for a protective order.

I.  BACKGROUND

Plaintiff Joseph Branco, as personal representative of the estate of his deceased wife, Ruth Branco, has brought a negligence suit against the Bothell facility of Defendant Life Care Centers of

ORDER – 1

America. After suffering a mild stroke, Mrs. Branco was admitted to Defendant's facility on August 7, 2003. In early October 2004, Mrs. Branco was injured after slipping out of her shower chair. As a result of her injuries and her preexisting condition, she died on October 15, 2004. In his complaint, Plaintiff alleges that Defendant and its agents caused his wife to suffer abuse and/or neglect while under its care in violation of Washington's Abuse of a Vulnerable Adult Act ("AVA"), and that Defendant's negligence is responsible for the falling incident that caused Mrs. Branco's death.

The matter presently before the Court is a discovery dispute involving the disclosure of "incident reports" regarding any falls, transfers, and assists, for the three years prior to Mrs. Branco's fall that were compiled by Defendant pursuant to a statutory quality assurance program.[1] Defendant seeks a protective order barring production of these incident reports. The parties have satisfied the meet-and-confer requirement of Federal Rule of Civil Procedure 37(a)(2).

## II. ANALYSIS

Defendant argues for a protective order on three alternative grounds: (1) the incident reports were generated pursuant to a quality assurance program and are shielded from discovery under the statutorily-created discovery privilege in RCW 43.70.510(4); (2) the incident reports are not relevant; and (3) the request for the incident reports is unduly burdensome.[2]

### A. Quality Assurance Privilege under RCW 43.70.510

Defendant argues that RCW 43.70.510 precludes discovery of its incident reports. In addressing Defendant's argument, the Court bears in mind that a statute creating limitations on discovery is "in sharp

---

[1] This information is sought by Request for Production C, which requests the production of "a copy of any complaints, memoranda, or incident reports in your possession dated prior to October 15, 2004 that relate in any way to the quality of care delivered to patients at [Life Care Center of Bothell]."

[2] In its response to Plaintiff's written discovery requests, Defendant also objected on the grounds that the request was overbroad and vague. Defendant appears not to have pursued this argument in light of Plaintiff's modified request. (Pl.'s Opp'n, Yackulic Decl. ¶ 2.) Accordingly, the Court will not address this argument.

ORDER – 2

contrast to the general policy favoring broad discovery" and "must be strictly construed and limited to its purposes." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 864 P.2d 921, 931 (Wash. 1993). In addition, "the burden of proving the statute's applicability rests with the party seeking its application." *Id.*

RCW 43.70.510 is part of a broad legislative enactment to promote the delivery of quality health care services. It authorizes licensed medical facilities to create a coordinated quality improvement program "for the improvement of the quality of health care services rendered to patients and the identification and prevention of medical malpractice." RCW 43.70.510(1)(a). To facilitate this process of healthcare evaluation, the legislature has deemed it necessary to maintain the confidentiality of the quality assurance process. Specifically, RCW 43.70.510(4) precludes discovery of "[i]nformation and documents, including complaints and incident reports, created specifically for, and collected and maintained by, a quality improvement committee." Strictly speaking, then, the discovery privilege in RCW 43.70.510(4) can only be properly invoked where a medical facility has generated documents for the sole purpose of healthcare evaluation, *and* for the exclusive use by a quality assurance committee ["QAC"].

Consistent with its responsibility to strictly construe the language of RCW 43.70.510(4), the Court finds that Defendant has failed to meet its burden to show that the incident reports at issue are privileged. While there is no dispute that Defendant does generate incident reports so that they may be reviewed by a QAC, the record also suggests that Defendant's incident reports are generated not merely for healthcare evaluation, but also for purposes of risk management and assessing its own liability in a potential lawsuit. It is telling, for example, that Defendant's insurance company apparently owns the incident reports at issue. (*See* Pl.'s Opp'n 10.) In the Court's view, this ownership is fatal to any assertion that the reports were created specifically for, and collected and maintained by a QAC for the sole purpose of healthcare evaluation. Defendant does not deny that its insurer owns the incident reports, and offers no explanation as to how this ownership is related to improving its quality of healthcare. Thus,

ORDER – 3

even though Defendant does use its incident reports to improve the quality of healthcare, Defendant has not rebutted Plaintiff's assertions that the incident reports are generated for risk management purposes—a use that is not consistent with the purpose of the discovery privilege under RCW 43.70.510.

An inspection of Plaintiff's incident report further substantiates Plaintiff's assertion that the incident reports are utilized for risk management purposes. The incident report itself is largely a factual summary of the incident that occurred and what steps had been taken to rectify the problem.[3] Save for one sheet in the incident report entitled "Incident Follow-up & Recommendation Form," which contains a single question calling for the reviewer to determine whether the resident's injury was due to abuse, neglect, or misappropriation (Pl.'s Opp'n Yackulic Decl. Ex. 5 (incident report for Plaintiff's injury) 20), there are no actual assessments of Defendant's quality of healthcare. The highly factual nature of these incident reports underscores the risk management nature of these documents, and the Court does not read the discovery privilege in RCW 43.70.510(4) to necessarily encompass the facts leading to the generation of an incident report. Accordingly, the Court finds that Defendant's incident reports are not entitled to the discovery privilege in RCW 43.70.510(4).

**B.   Relevance of the Incident Reports**

Defendant also argues that Plaintiff's request for incident reports seeks information that is not relevant to the present case. Specifically, Defendant argues that the term "neglect," as defined in the AVA,[4] only speaks to a pattern of neglect as to the vulnerable adult who is the subject of the litigation

---

[3] The Court is mindful that incident reports, by their very nature, must be highly factual in order to be an effective tool for self-assessment. Nevertheless, given the potential hardships statutory discovery privileges impose on parties in a system where broad discovery is highly favored, the Court deems it appropriate to place significant weight on evidence demonstrating that the incident reports are being used for purposes other than health care evaluation, which appears to the case here.

[4] The AVA defines neglect as "(a) a pattern of conduct or inaction by a person or entity with a duty of care that fails to provide the goods and services that maintain physical or mental health of a vulnerable adult, or that fails to avoid or prevent physical or mental harm or pain to a vulnerable adult; or

ORDER – 4

and therefore that incident reports regarding other residents are not relevant.

The scope of discovery in federal court is very broad. *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995). Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). For purposes of discovery, relevant information is "information 'reasonably calculated to lead to the discovery of admissible evidence.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "Relevance" under Rule 26(b)(1) is defined more broadly than relevance for evidentiary purposes, and discoverable information need not be admissible at trial. *See Shoen v. Shoen*, 5 F.3d 1289, 1299–300 (9th Cir. 1993).

The Court finds that incident reports regarding the falls, transfers, and assists of other residents are relevant to the present action. Initially, the Court notes that, in an action under the AVA, evidence of neglect need not necessarily relate *specifically* to the Plaintiff in order to be deemed relevant. *See Conrad v. Alderwood Manor*, 78 P.3d 177, 190 (Wash. App. 2003) (rejecting nursing home's relevancy objection to admission of evidence that nursing home received citation for failing to thoroughly investigate incidents involving other patients); *cf. Gammon v. Clark Equip. Co.*, 686 P.2d 1102 (Wash. App. 1984) (ordering new trial in products liability case after defendant refused to produce accident reports involving different product operated under different circumstances in violation of discovery order to produce all available accident reports). In addition, the Court finds that in a suit against a nursing home for the neglect of a vulnerable adult and for negligence, a request to view incident reports for other residents who were injured in the same or similar fashion is a request reasonably calculated to lead to the discovery of admissible evidence. Even taking as true Defendant's argument regarding the AVA's definition of neglect, the incident reports may contain information indicating deficiencies in Defendant's policies and procedures that were not corrected prior to Mrs. Branco's fall, thereby suggesting that

---

(b) an act or omission that demonstrates a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to the vulnerable adult's health, welfare, or safety." RCW 74.34.020(9).

ORDER – 5

Defendant failed to take steps to avoid or prevent physical harm *to her*, or that there was a failure to follow proper safety procedures. In addition, such incident reports would be highly relevant towards establishing the "pattern" element of the definition of neglect. Similarly, because the incident reports may contain information suggesting that Defendant disregarded a known or identifiable risk, this information would necessarily speak to the element of breach under Plaintiff's common law negligence claim. (*See* Pl.'s Compl. (Dkt. No. 1) ¶ 8.) Therefore, the Court finds that the incident reports regarding falls, transfers, and assists of other residents are relevant for purposes of discovery.

### C.  The Burden of Producing The Incident Reports

The Court is not satisfied that, given the nature of Plaintiff's request, the burdens associated with producing these incident reports outweighs the benefit of permitting discovery. While the Court understands that it may be time-consuming to inspect and redact incident reports for a particular cause of an injury, Plaintiff did limit the request from five years to three years, and the potential burden associated with producing these documents does not alter the fact that these incident reports are highly relevant to Plaintiff's claims. Moreover, Defendant has not disputed Plaintiff's contention that incident reports relating to falls have already been separated and reviewed by a "Fall Risk Group" that was not part of the QAC. (Pl.'s Opp'n. 11–12.) The fact that Defendant has apparently already separated a particular set of incident reports contributes significantly to a reduction in Defendant's burdens of production. At the very least, this suggests that Defendant has, on at least one occasion, gone through the process of reviewing and identifying incident reports according to the *cause* of an injury, and that a request that Defendant again sort its incident reports for purposes of discovery would not present an unreasonable burden.

//

ORDER – 6

### III. CONCLUSION

For the reasons set forth in this Order, Defendant's motion for a protective order is DENIED. Defendant is ORDERED to produce incident reports regarding falls, transfers, and assists for the three years prior to Mrs. Branco's fall. Defendant's request for attorney's fees associated with preparing the incident reports for production is DENIED.

SO ORDERED this 4th day of May, 2006.

*[signature]*
UNITED STATES DISTRICT JUDGE

ORDER – 7